MERCANTILE TRUST CO., EXECUTOR UNDER THE WILL OF FRANK A. RUF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9528.   Promulgated July 26, 1928.

*L. L. Hamby, Esq.*, *F. S. Bright, Esq.*, and *S. L. Swartz, Esq.*, for the petitioner.

*R. E. Copes, Esq.*, for the respondent.

OPINION.

MORRIS: The first allegation of error relates to the refusal of the respondent to allow as a deduction from the gross estate, the amounts of certain bequests contained in the will of the decedent to organizations operated for charitable, religious or educational purposes. The petitioner contends that these bequests constitute vested remainders under the laws of the State of Missouri and that the present values thereof are deductible from the gross estate in arriving at the net estate subject to taxation under section 403 of the Revenue Act of 1921. The respondent contends, on the other hand, that these bequests may be defeated by the possible invasion of the corpus of the estate by

the decedent's widow for her comfort, maintenance, and support and that, therefore, the deductions claimed should not be allowed under the provisions of section 403 .(a) (3) of the Revenue Act of 1921. That section of the statute provides:

SEC. 403.—That for the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(3) The amount of all bequests, legacies, devises, or transfers, except bona fide sales for a fair consideration in money or money's worth, in contemplation of or intended to take effect in possession or enjoyment at or after the decedent's death, to or for the use of the United States, any State, Territory, any Political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention or cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees exclusively for such religious, charitable, scientific, literary, or educational purposes. This deduction shall be made in case of the estates of all decedents who have died since December 31, 1917; \* \* \*

We are satisfied from the evidence that the institutions to which these bequests were made by the decedent are corporations organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes within the meaning of the Act. The sole question, therefore, is whether the power vested in the widow to invade the corpus of the estate for her comfort, maintenance and support is sufficient to defeat the deductions claimed by the petitioner.

The decedent devised the homestead and bequeathed certain personal property and cash to his wife. He also made specific cash bequests to his sister, brother and nephews and to certain employes; he then bequeathed and devised to the trustee, in trust, all of the rest, residue, and remainder of his estate, with power to hold, manage and control, to sell, transfer, convey and dispose of the same as it shall seem meet and proper, with authority to invest and reinvest all or any part of said trust estate " according to its sole judgment and discretion, without any limitation upon its powers and authority so to do." He directed the trustee to pay to his wife, beginning on the 15th day of the second month following his death, " all of the net income and revenue derived from said trust estate, or, if need be, such part of the corpus thereof as may be necessary for the comfort, maintenance and support of my wife, during her life," and he provided that " a request, in writing, to my Trustee, made by my wife, stating that the sum requested by her is needed for her comfort, maintenance and support, shall be authority to my Trustee to

pay unto her any sum so requested, out of the corpus; or, in the event of her incapacity, then my Trustee may, in its discretion, use so much of the corpus as may be necessary for her comfort, maintenance and support." His will provided further, that upon the death of his wife, the trustee should pay over and deliver certain specified sums to charitable, educational and religious organizations and should set aside certain other sums, or the remainder, the income from which to be paid to other charitable institutions.

The identical question raised by the instant case, with facts strikingly similar to those here, was considered and disposed of in *First National Bank of Birmingham* v. *Snead*, 24 Fed. (2d) 186. In that case the will of the decedent, who died in 1923, after directing the payment of certain legacies, left the residue of his estate to his wife, who was 68 years of age, and the First National Bank of Birmingham, as joint trustees, to pay the income to his said wife during her lifetime, and upon her death to distribute the residue of the trust estate in equal parts to nine institutions then existent, which were corporations organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes. The will there contained the following provision:

If at any time in the opinion of said trustees the net income from said trust estate shall not be sufficient for the proper support and comfort of my said wife, the trustees shall pay over to my said wife such additional sum or sums out of the principal of said trust estate as to them may seem necessary or desirable for such purposes.

The First National Bank of Birmingham, as executor, sued for the recovery of an amount of estate tax paid the collector of internal revenue and the complaint was demurred to in the District Court on the ground that the trustees under the will may invade the corpus of the estate for the proper support and comfort of the decedent's widow and thereby defeat the contingent donations to the alleged charitable institutions, which demurrer was sustained by the District Court and judgment was rendered for the defendant, which was, on appeal, reversed, and the cause remanded by the Circuit Court of Appeals for a new trial. The court, having found that the charitable institutions were in existence when the will took effect and being then capable of taking bequests in their favor upon the death of the testator's widow, to whom the will gave the income of the trust during her life, held that the amounts bequeathed to those institutions were vested, and said in conclusion:

We think that the averments of the complaint show such a state of facts that the existence of the power conferred on the trustees to invade the corpus of the trust estate cannot properly be given the effect of depriving the be-

quests to the charitable institutions of any substantial value. For estate tax purposes the approximate amount of that value was ascertainable, and was allowable as a deduction from the testator's gross estate.

In the case *Herron* v. *Heiner*, 24 Fed. (2d) 745, the testator died in February, 1919, leaving a net estate of over $2,000,000, which was subject to the Federal estate tax. The decedent's will, after making certain pecuniary legacies to his widow and relatives, left his entire residuary estate to the plaintiffs, as trustees, who were directed to pay from the income $1,000 per month to the decedent's widow during her lifetime and it further provided that "so much from the income of said fund as in the discretion of the trustees shall be deemed necessary and reasonable shall be appropriated to the support and maintenance of my brother, Byron S. Finley and my sister, Florence E. Finley during their natural lives." He further provided for the payment of $100 per month to five other legatees during their lifetime. He directed that the remainder of the income from his estate be divided into four equal parts to be donated by the trustees to certain charitable institutions. Both Byron and Florence Finley, provided for by the decedent, were incurably insane when the decedent died, and had been so for many years prior thereto; both had been maintained by the decedent in an institution from 1906 until his death, and thereafter the trustees maintained Byron Finley until his death in 1925, and Florence Finley has been maintained in an institution by the trustees from the testator's death until the present time. The plaintiffs there filed a Federal estate-tax return, and, in calculating the net estate subject to tax, determined the present value of the bequests to the trustees for religious, charitable and educational purposes and deducted the present values of the monthly payments to the maintained relatives and other legatees provided for, and the resulting figure was deducted from the gross estate in arriving at the net taxable estate. The Commissioner disallowed those deductions on the theory that the discretion of the trustees as to the amount of income which they might appropriate to the support and maintenance of the two insane persons was unlimited and that they might, therefore, if they saw fit, expend the entire net income from the residuary estate for such purposes. The court there, after considering section 403(a) (3) of the Revenue Act of 1918 (which for our purpose is the same as the Revenue Act of 1921), said:

First. That the power given to the trustees is not to appropriate the income to the use of the two incompetents, but to their support and maintenance; and the amount which the trustees are authorized to expend for their support and maintenance is limited to that which is reasonable and necessary.

Second. The amount which the testator himself considered reasonable for their support and maintenance is conclusively shown by the amounts which

he expended for that purpose for more than twelve years prior to his death. This amount for both was $54.70 per month. The amount which the trustees considered reasonable for that purpose is shown by the amount expended since the death of testator, which was $70.30 per month.

Third. The discretion of the trustees in such expenditures being thus limited by the testator, they have no power to appropriate income beyond what is reasonable and necessary for support. To go beyond this limit would be a breach of trust.

Fourth. The gift is not of the income absolutely, but simply a gift of support and maintenance, or a gift of so much of the income as may be reasonable and necessary, and the accumulations belong to the testator's estate.

Fifth. As the will in question specifically provides that only "so much from the income shall be appropriated" as is necessary, and that "the remainder of the income" shall be devoted to charity, it is clear that the right of the beneficiaries can rise no higher than this gift, which must be determined solely from the provisions of the will itself.

\* \* \* \* \* . \* \*

Seventh. The judgment of the court cannot, of course, be substituted for that of the trustees, so long as they act within the discretion conferred upon them; but, if they should undertake to apply the large income from this estate for support and maintenance, which could reasonably be supplied by a comparatively small amount, the trustees would subject themselves to injunction from such abuse of discretion in the future, and to surcharge for such excess appropriated in the past.

\* \* \* \* \* \* \*

Tenth. The trustees in this case are under obligations to pay everything to charity except a limited ascertainable amount for the maintenance of the two persons. This gift is vested, and covers the excess of the income in each year over the needs of the two beneficiaries, which amount is here alone in question.

\* \* \* \* \* \* \*

In conclusion the court said there:

The clear purpose of the testator, in the humane and philanthropic distribution of his large estate must not be defeated, and the manifest purpose of Congress exempting charitable gifts from taxation must not be thwarted by any narrow and meaningless interpretation of testator's will.

In the foregoing cases the testators clothed the trustees with discretion as to the payment of sums to their widows for their comfort, maintenance and support, while in the instant case "a request, in writing," to the trustees made by the widow stating that the sum so requested is needed for her "comfort, maintenance and support" is all the authority required. Although the power to demand further sums of money in addition to the amounts specifically provided for her in the will was expressly placed in the widow, her power is limited to those sums necessary for her "comfort, maintenance and support," and they must be reasonable under all of the circumstances. Should she demand sums beyond what would be considered reasonable to maintain her comfortably in her declining years in a manner

befitting her station in society, the trustees could, and indeed should, refuse to pay.

It is clear that the testator intended that his widow should have every possible comfort and that her maintenance and support should be the first consideration, but his intention is also clearly and unmistakably expressed with respect to the charitable institutions therein provided for. There is no doubt but that he considered the amount of his estate sufficient to yield his wife ample means for her proper maintenance and that his further provision for her was merely a protective measure. It was not designed to permit her, at her election, to defeat the terms of the will and deprive the charitable institutions of the bequests made to them. As an indication of the earnest desire of the testator to provide for those charitable institutions, paragraph numbered 15 of his will stated, " It is my will and intention that none of the various legacies herein given for charitable or educational uses shall lapse in case the particular institution to which it is given shall fail or cease to administer charity or provide education. * * * "

Considering all of the foregoing factors together with the decided cases of the courts of the State of Missouri, we conclude that the legacies to these charitable institutions became vested upon the death of the testator, and considering particularly the age of the widow, the size of the estate, and the clearly expressed intention of the testator as evidenced by his will, we are of the opinion, and we so hold, that the present values of these bequests at the date of death of the testator are deductible from the gross estate in determining the net estate subject to taxation and that the respondent erred in failing to allow them as such. See also *Boston Safe Deposit & Trust Co.* v. *Nichols*, 18 Fed. (2d) 660; *Union Trust Company of Pittsburgh* v. *Heiner*, 19 Fed. (2d) 362.

In reaching the foregoing conclusion we have also considered the case of *Mitchell* v. *United States*, 63 Ct. Cls. 613, in which it was held that a charitable bequest dependent upon a contingency which might not occur is not deductible from the gross estate under section 403 of the Revenue Act of 1918. The facts in that case, however, are clearly distinguishable from those of the instant proceeding.

The second allegation of error relates to the inclusion in the decedent's gross estate of the excess over $40,000 of life insurance taken out by the decedent upon his own life and payable to beneficiaries other than his estate.

The value of the insurance in excess of $40,000, or $41,075.92, was covered by three policies taken out by the decedent in 1903, all of which at the time of his death named his widow as beneficiary thereunder.

Section 402(f) of the Revenue Act of 1921 provides:

That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(f) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

The same subsection of the 1918 Act which is identical was considered by the Supreme Court of the United States in *Lewellyn* v. *Frick*, 268 U. S. 238, and the identical issue presented by this proceeding was therein disposed of. The court held that the subsection applies only to policies issued after the passage of the Act. The respondent therefore erred in including in the gross estate the amount here in controversy.

The third allegation of error urged by the petitioner relates to the inclusion in the gross estate of the decedent of the value of his widow's interest in said estate. The petitioner urges as a proposition of law that under the laws of the State of Missouri, in effect at the time of the death of the decedent, his widow became and was the owner of a child's share in all the personal property of which the decedent was then possessed, not as an heir, nor in any manner by inheritance, but solely by virtue of the marital relationship existing between them. Section 402 (a) and (b) of the Revenue Act of 1921 provides:

That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate;

(b) To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy.

In order to determine the interest of the decedent in the property here in question and the interest of his surviving spouse, we must resort to the statutes of Missouri in force at the time of the decedent's death. The pertinent section of the Missouri statute affecting the interests of the widow is as follows:

Sec. 321. Husband dying without children, widow how endowed.—When the husband shall die without any child or other descendants in being, capable of inheriting, his widow shall be entitled: First, to all the real and personal estate which came to the husband in right of the marriage, and to all the personal property of the husband which came to his possession with the written assent of the wife, remaining undisposed of, absolutely, not subject to the payment of

the husband's debts; second, to one-half of the real and personal estate belonging to the husband at the time of his death, absolutely, subject to the payment of the husband's debts.

The language contained in section 202 (a) of the Revenue Act of 1916, which is identical with that contained in section 402 (a), *supra*, was considered in *United States* v. *Field*, 255 U. S. 257, and the court set out three conditions, taken from the provisions of the statute, which must be fulfilled if the property is to be taxed: (1) the property sought to be taxed must have been an interest of the decedent at the time of his death; (2) which after his death is subject to the payment of charges against his estate and the expenses of its administration; and (3) subject to distribution as part of his estate.

The petitioner's counsel has devoted considerable space in his brief to the discussion of the various State statutes affecting dower and curtesy and the descent and distribution statutes and has cited many cases in support of his argument which, however, do not convince us that the value of the property in question should not be included in the gross estate within the Federal taxing statute.

Let us examine section 402(a), *supra*, in the light of *United States* v. *Field*, *supra*, and the three tests therein provided, and determine whether the widow's one-half of the personalty provided for under section 321, *supra*, of the State statute is taxable as a part of the decedent's gross estate. There is no question, and this we believe the petitioner's counsel will concede, but that the decedent had an interest in all of the personal property, irrespective of the State statute, " at the time of his death." This conclusion we believe entirely coincides with the provisions of section 321 of the State statute, wherein it says that the widow shall be entitled to one-half of the husband's property " belonging to the husband at the time of his death absolutely." Nor do we believe the fact that the personalty " is subject to the payment of the charges against his estate " is disputed by the petitioner's counsel. The State statute, section 321 referred to above, while it does not specifically provide for expenses of administration, does provide that the property in which she is endowed shall be " subject to the payment of the husband's debts," and we, therefore, have no hesitancy in saying that the second test laid down in *United States* v. *Field*, *supra*, is amply met. Therefore, was the personal property provided for under section 321 of the State statute " subject to distribution as a part " of the decedent's estate? We think it was.

A widow taking under the provisions of section 319 of the State statute, which is companion to section 321, has been defined by the Supreme Court of Missouri in *Howard* v. *Strode*, 146 S. W. 792, as a " distributee " and " as such stands in the same relation to the personal estate as does the child, and manifestly is entitled to the same remedies

to enforce her rights." The court in that case quoted the language of *Hastings* v. *Meyer's Administrator*, 21 Mo. 519, which was, " as to personalty, we see no difference between the interest of a widow in her deceased husband's estate and that of any one of his distributees." The court then said, " This interest is to be ascertained upon final settlement of the estate, and after full accounting by the administrator, and then an order of distribution." Omitting for our purpose here the doctrine of election, and the right of the widow to renounce the decedent's will, there is no question but that if the decedent had attempted to deprive the widow of her distributive share of the personalty she could have, had she chosen, proceeded against the estate after his death as a distributee, and could have recovered her share of the personalty provided for in the statute.

Section 321, *supra*, in our opinion, does not attempt to establish a rule of title in personalty because of the marital relationship existing between the parties, but is merely declaratory of the rights of the widow and merely specifies the quantum of the personalty which she shall take after the death of the decedent.

We have examined the State statutes carefully, and also the cases cited by counsel, together with innumerable other cases on the same subject, and we are forced to conclude that the property which the petitioner contends should not be included in the gross estate was an interest of the decedent at the time of his death which was subject to the payment of his debts, and, furthermore, was subject to distribution as a part of his estate. In addition Mrs. Ruf did not renounce the will, but at all times accepted the provisions therein made for her. It is manifest, therefore, that the property to which she thereby became entitled was acquired by her by transfer from her husband.

The question presented for consideration by the fourth allegation of error herein has been heretofore decided adversely to the petitioner in *Irving Bank-Columbia Trust Co.*, 62 Court of Claims 564, certiorari denied, 273 U. S. 751; *Old Colony Trust Co.* v. *Malley*, 19 Fed. (2d) 346, and we, therefore, sustain the findings of the respondent with respect to this issue.

The fifth allegation of error relates to a bequest of certain works of art to the most Reverend John J. Glennon, Archbishop of St. Louis, for installation in the Catholic Cathedral of St. Louis. Since there is no question but that this bequest was to or for the use of a corporation organized and operated exclusively for religious purposes within the meaning of section 403 (a) (3), *supra*, the value of these works of art should be deducted from the gross estate in determining the net estate subject to taxation.

*Judgment will be entered under Rule 50.*