HELENA LIEBES, EXECUTRIX, ESTATE OF ISAAC LIEBES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29944. Promulgated September 10, 1930.

*Leon E. Morris, Esq.,* and *Edward M. Jaffa, Esq.,* for the petitioner.

*Frank T. Horner, Esq.,* for the respondent.

734

OPINION.

VAN FOSSAN: The first allegation of error questions the right of the respondent to include in the taxable estate of the decedent the community interest of the decedent's widow, Helena Liebes, therein. This issue is decided adversely to the petitioner on the authority of *Griffith Henshaw, Executor*, 12 B. T. A. 1441; affd. (C. C. A.), 31 Fed. (2d) 946; certiorari denied, 280 U. S. 43A.

Inasmuch as the question relating to the applicability of the statute of limitations would, if decided in favor of the petitioner, preclude a decision upon the second issue, we will direct our attention first to the third issue.

Isaac Liebes died May 29, 1920. The petitioner, as executrix of his estate, filed the Federal estate-tax return therefor on May 29, 1921. On March 14, 1925, the respondent mailed a deficiency letter to the petitioner naming a deficiency in tax amounting to $9,907.99. That letter was in the usual form adopted in connection with jeopardy assessments, and informed her that such an assessment would be made; that she had the right to file a claim in abatement; and that her right of appeal to this Board would not be available until after notice of the respondent's action on her claim. The assessment was made in March, 1925, and bond was executed February 15, 1926. The record does not disclose the actual date of the filing of the claim in abatement but such claim was rejected wholly on June 7, 1927, and the petitioner so notified. The appeal was filed July 26, 1927. It thus appears that the appeal relating to the jeopardy assessment was timely made and the proceeding is properly before us. The petitioner asserts, however, that the statute of limitations prevents the increasing of the assessment to include the additional tax, if any, on the proceeds of the policies of insurance in excess of $40,000 carried by the decedent on his life.

The statute imposes an excise upon the transfer of the estate upon the death of the owner. *Y. M. C. A.* v. *Davis*, 264 U. S. 47; *Nichols* v. *Coolidge*, 274 U. S. 531; *May* v. *Heiner*, 281 U. S. 238. The petitioner availed herself of the right and privilege of bringing this proceeding before us for the purpose of redetermining the correct amount of tax due upon the the transfer of decedent's estate.

In order to bring the question of the taxability of the proceeds of the insurance policies before us the respondent availed himself of his right under section 308(e) of the Revenue Act of 1926, which provides:

The Board shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the executor, and to determine whether any additional amount or addition to the tax should be assessed, if claim therefor is asserted by the Commissioner at or before the hearing or a rehearing.

By an amendment to his answer, duly filed by permission of the Board, the Commissioner asked the inclusion in the taxable estate of the proceeds of the insurance policies. In our opinion this action of respondent constitutes the making of a claim for an additional amount or addition to the tax which should be assessed as provided for in the statute. It is our opinion, therefore, that the provisions of the statute have been fully complied with and that the statute of limitations does not bar the assessment of the tax, whether increased or diminished by our decision.

We observe that the petitioner agreed that the sum of $9.97 erroneously omitted in the respondent's letter of June 7, 1927, be included in the gross estate of the decedent. If the theory of the petitioner, elsewhere advanced, is correct, the statute of limitations would operate as to this sum on exactly the same basis as it would apply to the proceeds of the insurance policies. In our opinion, however, the said sum of $9.97 is properly included in the decedent's gross estate.

The further question presented relates to the inclusion in the taxable estate of the proceeds of certain insurance policies on the life of the decedent. From the findings of fact it appears that on January 1, 1896, the Mutual Life Insurance Co. of New York issued an insurance policy on the life of the decedent, payable to his executors, administrators or assigns. The policy was brief in form and contained no provision respecting the right of revocation, change of beneficiary, cash, loan surrender and paid-up insurance values. "By mutual consent," however, and by endorsement on the face of the policy bearing date of January 1, 1908, the beneficiary was changed to Helena Liebes, the wife of the insured, and by a second endorsement, dated January 15, 1917, the beneficiary again was changed " by mutual consent " to Leon Liebes, a son.

Petitioner rests her contention that the proceeds of the insurance policies are not to be included in the gross estate on the case of *Lewellyn* v. *Frick et al.*, 268 U. S. 238. In that case the Supreme Court held that the Revenue Act of 1918 does not apply to policies the rights to the proceeds of which had vested in the beneficiaries before the passage of the statute.

The principle of law underlying this decision, i. e., that a named beneficiary under an insurance policy which does not reserve to the insured the power to change the beneficiary has a vested right of which he may not be deprived without consent, is basic in insurance law. The cited case merely applied this principle to the incidence of the Revenue Act.

While the above decision is not so broad as petitioner contends, it does suggest the test to be applied—whether or not the right to the proceeds had vested in the named beneficiaries.

The same general question of law has been more fully discussed by the Supreme Court in three later cases, in all of which the opinion was rendered by the same learned Justice. *Saltonstall* v. *Saltonstall*, 276 U. S. 260; *Chase National Bank* v. *United States*, 278 U. S. 327; *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339. The rule to be found in these cases is that " a transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death." Thus, if an insurance policy reserves to the insured

alone, the power to change the beneficiary, no rights have vested in the beneficiary and the transfer is incomplete until the death of the insured. If, however, the policy names a beneficiary without power of revocation or requires the beneficiary's consent, the transfer. is complete. The several policies before us must be tested by these principles.

The first policy listed was silent as to power of revocation. It appears, however, that the beneficiary of the policy was actually changed twice "by mutual consent." Since mutual consent was necessary to effect a change, it follows that the last named beneficiary possessed a vested right of which he could not be deprived without consent. Accordingly, the transfer of the benefits of the policy was complete January 15, 1917, prior to the passage of the Revenue Act of 1918, and the proceeds of this policy should not be included in the gross estate.

The policies of the second group were in the Equitable Life Assurance Society; all were dated October 10, 1912; they all expressly reserved the right of revocation and the power to change the beneficiary. Such a change was made on January 17, 1917. This power rested solely in the insured, and was in no wise dependent on the consent of the beneficiary nor was it exhausted by the exercise thereof on January 17, 1917. The insured retained, to the time of his death, the power to revoke or recall his action. Thus, the transfer had not vested in the beneficiary and was not complete until the death of the insured occurred. The proceeds of these four policies should properly be included in the taxable estate.

The third group comprises four policies issued by the Mutual Life Insurance Co. of New York under date of February 8, 1915. In the body of each policy was the provision that it was issued "without right to the insured to change the beneficiary." Each of these policies, however, bears on the face the following stamped endorsement: "The beneficiary is changed to (beneficiary named). The right to revoke this designation of beneficiary is reserved to the insured." Under date of January 15, 1917, by the above form of endorsement, the beneficiary was changed from Helena Liebes, the original beneficiary, to a son, Leon Liebes, as to two policies, and to a daughter, Linda Liebes Lederman, as to the other two. The consent of the original beneficiary to the above changes does not appear on the face of the policies nor in the record, but it is a fair presumption that such consent was given if the law of the State so required. In any event, the policy as now before us bears on its face the power of revocation in the insured, and such power continued from January 15, 1917, to the date of decedent's death. This amendment to the original contract entirely altered the status of the rights of the parties thereunder. Thereafter, the in-

sured could have exercised his right of revocation independently of any consent or concurrence of any other person. No rights were vested in the beneficiary and whatever right may have previously vested was divested. Accordingly, the transfer to which the tax attaches occurred upon the death of the insured, and the proceeds of the policies should be included in the taxable estate. *Chase National Bank* v. *United States*, *supra*.

*Judgment will be entered under Rule 50.*