DAVID A. REED AND ROBERT T. ROSSELL, EXECUTORS OF THE LAST WILL AND TESTAMENT OF JAMES H. REED, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47344.   Promulgated September 25, 1931.

*Maynard Teall, Esq.*, for the petitioners.
*L. S. Pendleton, Esq.*, for the respondent.

## OPINION.

Van Fossan: The first allegation of error challenges the action of the respondent in including in the gross estate of James H. Reed, deceased, the proceeds of six life insurance policies in excess of $40,000, receivable by beneficiaries other than the executors of the estate.

The Revenue Act of 1926 provides:

Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

The petitioners maintain that as to the first group of policies the power of revocation was not lodged in the decedent at his death and hence the beneficial interest in the proceeds thereof had vested fully in the beneficiaries.

The language of the insurance contract establishing Kate J. Reed as the primary beneficiary is as follows: " New-York Life Insurance Company * * * promises to pay * * * to Kate J., wife of the Insured * * * with * * * right of revocation." The insured had the option of reserving or relinquishing his right of revocation. At the time the policies were issued the decedent chose to retain it. However, in the later clause entitled " change of beneficiary " the insured was given the right to designate a new beneficiary *with or without reserving the right of revocation.*

The respondent contends that the phrase "with * * * right of revocation " appearing after the designation of the beneficiary, is general in character and continued in effect during the life of the policy. Petitioner contends that when this provision is read in con-

nection with other provisions of the policy the insured at the time of his death had no right of revocation and that, accordingly, the right to the proceeds of the policies had vested.

The respondent further asserts that the decedent's failure to reserve his right of revocation under the " change of beneficiary " provision was not equivalent to a relinquishment of that right, but was merely a silence without significance.

With neither of respondent's propositions can we agree. The language of the paragraph styled " change of beneficiary " must be closely scrutinized. The gist of its provisions is that " when right of revocation has been reserved (as here) * * * the Insured * * * may * * * designate a new beneficiary with or without reserving right of revocation * * *." The right to change a beneficiary must be expressly reserved. Cooley, Briefs on Law of Insurance, Vol. IV, p. 3755. In the absence of an express reservation the rights of the named beneficiary are protected and his consent to a change must be secured. Joyce, The Law of Insurance (2d ed.), sec. 730; *Smith* v. *Metropolitan Insurance Co.*, 34 Pa. Sup. 72; *Schaefer's Estate*, 194 Pa. 420; *Entwistle* v. *Travelers' Insurance Co.*, 202 Pa. 141. Here, we have two pertinent provisions relating to revocation. The first grants the right. The second indicates how it may be perpetuated. When decedent elected to exercise the right first granted he brought into action the provision of the later paragraph. Under this paragraph affirmative reservation of the right to make a further change is necessary.

In *Brown* v. *Powell*, 130 Miss. 496; 94 So. 457 (1923), the Supreme Court of Mississippi had before it the exact question presented in the instant case. The insurance policy there under consideration contained precisely the same two provisions and in the identical language found in the policies here in controversy. It was there held:

Where the name of the beneficiary in a life insurance policy is followed by the words " with right of revocation," and the policy provides that, " When the right of revocation has been reserved * * * the insured * * * may * * * designate a new beneficiary, with or without reserving right of revocation, by filing written notice thereof at the home office of the company accompanied by the policy for suitable indorsement thereon," the insured, when designating a new beneficiary, must state in the notice thereof filed with the insurance company that he reserves the right of revocation if he desires to again exercise such a right.

Thus when decedent exercised the right of revocation granted by the policy and designated a new beneficiary without expressly reserving the right to make a further change, his right of revocation was gone and revocation could then be made only with consent of the new beneficiary.

Looking at the converse of this reasoning, if the right of revocation granted in the first quoted portion of the contract was a continuing right and authorized innumerable changes of beneficiary, then the provision in the later paragraph styled " change of beneficiary " (i. e., with or without reserving right of revocation) is not merely meaningless, but actually in conflict with the first provision. In construing a contract effect should be given to all its provisions if such be possible, and, where two constructions are possible, the one which gives effect to all is preferable to one that gives effect but to part and nullifies in part.

The construction we have adopted gives effect to both provisions of the contract.

Under the rule laid down in *Chase National Bank* v. *United States*, 278 U. S. 327; *Saltonstall* v. *Saltonstall*, 276 U. S. 260; and *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, a transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death. If an insurance policy reserves to the insured alone the power to change the beneficiary, no absolute rights vest in the beneficiary and the transfer is incomplete until the death of the insured.

On the other hand, if the power of revocation be not reserved, or, as in the instant case, has been originally reserved, then exercised and exhausted and lost because of failure to make specific further reservation, the transfer of the rights under the policy has occurred prior to the death of the decedent and at his death the proceeds of the policy form no part of his taxable estate.

In the case before us, as to the first group of policies no power of revocation remained in the insured after the designation of the second beneficiaries. The transfer of the beneficial interest in the proceeds of the policies, therefore, occurred on April 18, 1910. The transfer having been effectively made and the rights of the beneficiaries having vested long prior to decedent's death, the proceeds of the policies were improperly included as part of the taxable estate of decedent. See *Helena Liebes, Executrix*, 20 B. T. A. 731; *Philip W. Blood, Executor*, 22 B. T. A. 1000.

Though the Supreme Court had under consideration a different statute, the reasoning employed in *Reinecke* v. *Northern Trust Co.*, *supra*, as to the " five trusts " lends strong support to the decision here reached as to the first group of policies. The court there said:

Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his benefit as if the gift had been absolute.

In the second group of policies the converse situation is presented. In Policy No. 4119975 of the New York Life Insurance Company

the beneficiary clause reserved the right of revocation to the insured. The " change of beneficiary " clause, uniform in all the New York Life Insurance Company policies, specifically granted to him the right to name a new beneficiary when the right of revocation had been reserved and certain collateral conditions had been met. During his lifetime and while the policy was in force, the decedent designated his wife, Kate J. Reed, as his primary beneficiary and made no change in that designation. In the Equitable Life Assurance Society policies the provisions governing the rights of revocation and change of beneficiary were even broader. The beneficiary clause named as beneficiary Kate J. Reed, wife of the assured, " subject to the right of the assured to change the beneficiary " and the clause entitled " privilege of changing beneficiary " granted the assured the right to change the beneficiary at any time during the continuance of the policy.

In the second group, therefore, the insured, up to the time of his death, possessed the right of revocation and the right to substitute a new beneficiary in the place of the one named. Such rights gave him the control over the benefits flowing from the contracts of insurance and the power to direct their future enjoyment until his death. Thus the facts of the second group of policies bring them within the rule laid down in *Chase National Bank* v. *United States, supra:*

Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power, and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax.

The proceeds of the second group in excess of $40,000 are taxable. See *Louis M. Weiller*, 18 B. T. A. 1121; *Edwin S. Rauh, Executor*, 19 B. T. A. 993; *Helena Liebes, Executrix, supra; Philip W. Blood, Executor, supra.*

The petitioners contend that an act imposing a tax on the proceeds of an insurance policy taken out prior to 1918 is unconstitutional. We find no authority for this view. The petitioners cite *Lewellyn* v. *Frick*, 268 U. S. 238; *Tyler* v. *United States*, 281 U. S. 497; and *Coolidge* v. *Long*, 282 U. S. 582, as supporting their contention. The situation presented in the *Frick* case was extensively considered in *Bessie M. Ballinger, Executrix*, 23 B. T. A. 1311.

The second issue is whether or not the payments made by the petitioners to cancel unpaid balances on certain pledges of the decedent to the University of Pittsburgh and the Pittsburgh Medical Center are properly deductible as claims from the decedent's gross estate under the provisions of section 303 (a) (1) of the Revenue Act of 1926.

The situation on this point is similar to that in *Jeptha H. Wade, Jr., et al.*, 21 B. T. A. 339, and on the authority of that decision we hold that the sum of $7,875 paid to discharge such obligations is deductible from the decedent's gross estate.

The respondent contends that the consideration for the claims against the estate must have been received by the decedent. We have disposed of this question in *Jeptha H. Wade, Jr., et al., supra*, where we held that such a requirement is not prerequisite to the allowance of the deduction.

*Judgment will be entered under Rule 50.*