Jacob K. Newman and Elsa Schwartz Newman, Executors, Estate of Edgar Newman, Petitioners, *v.* Commissioner of Internal Revenue, Respondent

Docket No. 49553.    Promulgated September 26, 1933.

*Ralph J. Schwartz, Esq.*, for the petitioners.
*John D. Kiley, Esq.*, for the respondent.

54

**OPINION.**

ADAMS: Petitioners contend that none of the proceeds mentioned in our findings should be included as a part of decedent's gross estate, and, in any event, no more than one half of such proceeds should be so included.

In support of the contention that none of the proceeds should be included petitioners rely on three points, as follows:

(a) The policies, having been taken out prior to the effective date of the Revenue Act of 1918, are controlled by the decision of the Supreme Court of the United States in the case of *Lewellyn* v. *Frick*, 268 U.S. 238. They form no part of the gross estate of the decedent. They cannot be taxed as part of that gross estate, without running counter to the provisions of the Fifth Amendment of the Constitution of the United States and Article 1, Sec. 8 of the Constitution of the United States.

(b) The proceeds of these policies cannot be included in the gross estate, because of the decision of the Supreme Court of the United States in the case of *Chase National Bank* v. *United States*, 278 U.S. 327. That case has no application to the present case and if it were applicable, it is distinguishable.

(c) The estate tax is concededly a tax imposed on transfers at death. It is the transfer that is subject to the tax. Under the local law of Louisiana, insurance policies and their proceeds payable to a wife, as in this case, form the separate property of the wife, and no interest was transferred by the death of the decedent. To impose a tax on the wife's property would run counter to the provisions of the Constitution of the United States.

The Supreme Court, in *Lewellyn* v. *Frick*, *supra*, held that the Revenue Act of 1918, imposing a transfer tax on proceeds of insur-

ance policies, applied only to policies issued after the passage of the act. The *Frick* decision was decided on May 11, 1925, and was followed by this Board in *Charles L. Harris, Administrator*, 5 B.T.A. 41 (1926); *Martha B. Phelps, Executrix*, 6 B.T.A. 648 (1927); and *Mercantile Trust Co., Executor*, 13 B.T.A. 85 (1928); and by the Federal District Court for the Western District of Missouri in *Wyeth* v. *Crooks*, 33 Fed. (2d) 1018.

On January 2, 1929, the Supreme Court handed down its decisions in *Reinecke* v. *Northern Trust Co.*, 278 U.S. 339, and *Chase Nat. Bank* v. *United States, supra*. Among other things, the former case dealt with two certain trusts which were created prior to the passage of the applicable statute, but " made subject to a power of revocation in the transferor * * *." The Supreme Court held that by reason of the reserved power of revocation the " shifting of the economic interest in the trust property which was the subject of the tax " was not complete until decedent's death, and that the applicable statute was not, therefore, retroactive, since death followed the passage of the statute. In the latter case the decedent on September 13, 1922, took out three insurance policies on his life, named his wife beneficiary in each but reserved the right to change the beneficiary, and died on April 10, 1924. In holding as constitutional the statute which sought to tax as a transfer the proceeds of the policies there in question, the Supreme Court said in part:

The statute in terms taxes transfers.

* * * * * * *

The precise question presented is whether the termination at death of that power and the consequent passing to the designated beneficiaries of all rights under the policies freed of the possibility of its exercise may be the legitimate subject of a transfer tax, as is true of the termination by death of any of the other legal incidents of property through which its use or economic enjoyment may be controlled.

A power in the decedent to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life * * * is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death.

Cf. *Porter* v. *Commissioner*, 288 U.S. 436.

Subsequent to the decisions in *Reinecke* v. *Northern Trust Co.* and *Chase Nat. Bank* v. *United States, supra*, it has been held consistently that where a decedent has taken out insurance policies on his own life and reserved, up to the date of his death, the right to change the beneficiary, the proceeds of such policies (subject to an exemption of $40,000 where the proceeds are receivable by beneficiaries other than the executor) are a part of the gross estate of the decedent, regard-

less of when the policies were taken out. See *Louis M. Weiller et al.*, *Executors*, 18 B.T.A. 1121; *Edwin S. Raugh, Executor*, 19 B.T.A. 993; *William A. Cushman et al., Executors*, 19 B.T.A. 1012; *Fannie C. Richardson et al., Trustees*, 20 B.T.A. 728; *Helena Liebes, Executrix*, 20 B.T.A. 731; affd. (C.C.A., 9th Cir.), 63 Fed. (2d) 870; *Heiner v. Grandin* (C.C.A., 3d Cir.), 44 Fed. (2d) 141 (Circuit Judge Buffington dissenting on ground that *Frick* case was still the law); reaffirmed at 56 Fed. (2d) 1082; *Max W. Feuerbacher et al., Executors*, 22 B.T.A. 734; *Philip W. Blood et al., Executors*, 22 B.T.A. 1000; *Anthracite Trust Co. v. Phillips* (U.S. Dist. Ct., Pa.), 49 Fed. (2d) 910; *H. T. Cook et al., Executors*, 23 B.T.A. 335; *Lillian T. Latty, Executrix*, 23 B.T.A. 1250; *Bessie M. Ballinger, Executrix*, 23 B.T.A. 1312; *David A. Reed et al., Executors*, 24 B.T.A. 166; *Oreon E. Scott et al., Executors and Trustees*, 25 B.T.A. 131; *Sally S. Levy et al., Executors*, 25 B.T.A. 1174; affirmed on this proposition by the second circuit, 65 Fed. (2d) 412; and *Harry LeBaron Sampson, Executor*, 1 Fed. Supp. 95.

It would serve no useful purpose to discuss further the three above mentioned points relied upon by petitioners, as each point is decided adversely to petitioners in one or more of the foregoing decisions. We pass, therefore, to petitioners' alternative contention that, in any event, no more than one half of the proceeds in question should be included in decedent's gross estate.

Section 302 of the Revenue Act of 1926 provides in part as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*     \*     \*     \*     \*     \*     \*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies *taken out by the decedent* upon his own life. [Italics supplied.]

The total proceeds here involved, $176,851.13, were all receivable by decedent's widow, who was the sole beneficiary under all the policies. No amount was "receivable by the executor \* \* \*." Therefore, only the last phrase of section 302 (g) is applicable here. And the only matter left for determination under that phrase is whether, in fact and in law, the policies in question were "taken out by the decedent \* \* \*."

Article 25 of respondent's Regulations 70 provides in part as follows:

Insurance is deemed to be taken out by the decedent in all cases where he pays all the premiums, either directly or indirectly, whether or not he makes the application. On the other hand, the insurance is not deemed to be taken out by the decedent, even though the application is made by him, where all

the premiums are actually paid by the beneficiary. *Where a portion of the premiums were paid by the beneficiary and the remaining portion by the decedent the insurance will be deemed to have been taken out by the latter in the proportion that the premiums paid by him bear to the total of premiums paid.* [Italics ours.]

The matter contained in section 302 (g), *supra*, is identically the same as the matter contained in section 402 (f) of the Revenue Acts of 1918 and 1921 and section 302 (g) of the Revenue Act of 1924; and the matter quoted above from article 25 of Regulations 70 is identically the same as is contained in article 25 of Regulations 68 (1924 edition), and substantially the same as is contained in article 27 of Regulations 63 (1922 edition) and article 32 of Regulations 37 (1919 edition).

It is petitioners' position that, since it is stipulated that " the premiums on all of the policies were paid out of community income ", we are compelled to find that one half of the premiums was paid by decedent and one half by his wife; that under the respondent's regulations only one half the insurance shall be deemed to be " taken out by the decedent "; and that only the proceeds from one half the policies are, therefore, within the statute.

We shall divert a moment to make three observations: First, as stated above, the question with which we are concerned is, Were the policies " taken out by the decedent? " On the basis of the pleadings alone, we would be justified in resolving this question in favor of the respondent, for the reason that paragraph 5 (b) of the petition alleges, and the answer admits, that " all of the above policies were taken out by decedent * * *." See a similar statement in paragraph 5 (a) of the petition, which the answer also admits. But, in view of the stipulation by the parties that " the premiums on all of said policies were paid out of community income," we think it is our province to decide as a matter of law whether, under article 25 of Regulations 70, only one half of the insurance shall be deemed to have been taken out by the decedent. Second, throughout the entire argument of petitioners, considerable stress is laid on statements found in the decisions of the Louisiana courts to the effect that proceeds of insurance policies payable to the wife form no part of the husband's estate. But the " net estate " as used in the Federal statute " does not mean an amount to be ascertained as such under any general rule of law or under statutes governing the administration of estates, but is the gross estate as specifically defined in section 302, less deductions permitted by section 303." *Porter* v. *Commissioner, supra.* And as explained above, the " gross estate as specifically defined in section 302 " includes proceeds of insurance (in excess of $40,000 when received by the beneficiary) under policies taken out by decedent, regardless of when taken out, in all cases

where the insured reserved the right to change the beneficiary. *Chase Nat. Bank* v. *United States, supra,* and cases thereafter cited. Third, it should be noted that petitioners concede that the proceeds in question form no part of the *community* estate, which concession, as far as the proceeds in question are concerned, makes inapplicable the ruling contained in Treasury Decision 3138, 23 T.D. 238. Cf. *Liebman* v. *Fontenot,* 275 Fed. 688.

Because of the fact that the premiums were paid out of community income, can it be said that the decedent paid one half and his wife one half, and that under article 25, Regulations 70, *supra,* only one half of the insurance in question shall be deemed to have been taken out by the decedent?

Article 2404 of the Revised Civil Code of the State of Louisiana (third edition) provides in part as follows:

The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife.

In *Moseman's Estate,* 38 La. Ann. 219, the husband, a short while before his marriage, had taken out a policy of insurance on his own life, payable "to his executors, administrators, or assigns." After his marriage the premiums were paid from community funds. After his death, upon settlement of his estate, the question was agitated whether the money paid by the insurance company upon the policy belonged to the community. In holding the money so paid to be property of the husband's separate estate, the court said in part:

The contract creates certain rights and obligations which spring into existence the moment it is formed. Thus, at the date of the policies, Moseman acquired for himself the right to receive, at his death, * * * the sums stipulated to be paid, subject to the conditions of compliance with his own engagements to pay the premiums as they fell due.

The court then decided that the "character of the interest and of the ownership thereof takes its impress from the date of the contract" and that "we are bound to hold that the interest of Moseman under these policies, having vested before his second marriage and at a time when he was a single man, belonged to his separate estate, and did not enter into the subsequent community." The court then continued:

We are of opinion, however, that the community is entitled to reimbursement of the amount of the several premiums which were paid, after the marriage, out of its funds.

We are aware that, in the case of insurance by the husband for the benefit of the wife, it has been held that the latter takes the fund without liability to reimburse the community the premiums paid by it. *Succession of Bofenschen,* 29 Ann. 714.

Cf. *E. Michna*, 24 B.T.A. 715.

In *Succession of Bofenschen*, 29 La. Ann. 711, 714, the court, in referring to *Succession of Clark*, 27 La. Ann. 269, said in part:

Clark and his wife died on the same day. His death was a few hours before hers. The husband or in other words, the community owed rent for the house in which himself and wife lived. He had but little property, not enough to pay his rent. He had insured his life in his wife's behalf. His lessor, unable to realize the rent from his scanty effects, sought to make this life-policy answerable for it. It was held that the money derived from his policy belonged to his wife's succession, and it was decreed to her legatees. The objections made by the opponents in the present case are the same as those considered in these cases, and pronounced untenable. The policy on the decedent's life issued to his wife for the benefit of herself and children. *The premiums were paid by the husband out of community funds, over which he had control as head and master thereof.* The most that could be claimed would be the reimbursement of the premiums to the community, but we do not think that claim well founded. [Italics ours.]

The law of community property also exists in the adjoining State of Texas. There, as in Louisiana, the husband is head and master of the community. *Waterman Lumber & Supply Co.* v. *Robins*, 159 S.W. 360; *Lasater* v. *Jamison*, 203 S.W. 1151; *Stone* v. *Jackson*, 109 Tex. 385; 210 S.W. 953; and *Moore* v. *Wooten*, 265 S.W. 210. Cf. *Poe* v. *Seaborn*, 282 U.S. 101; and *Bender* v. *Pfaff*, 282 U.S. 127.

In *Martin* v. *McAllister*, 94 Tex. 567; 63 S.W. 624, Thomas P. Martin took out an insurance policy on the life of his wife, payable to himself. The premiums were paid out of the community. Upon the wife's death the question arose whether the proceeds belonged to the husband as his separate property or to the community. In holding they belonged to the husband, the court said in part:

The money derived from the policy * * * was not acquired during the marriage, but was received by the husband after her death * * * and belonged to Thomas P. Martin in his separate right. [Citing both Louisiana and Texas cases.] * * *

It is contended * * * that the husband could not appropriate the community funds to his own use in the purchase of this contract without the consent of his wife; but our statute specifically provides that the husband shall have the sole right of control of the community property, and it has been uniformly held that such control cannot be interfered with unless it is exercised in fraud of the rights of the wife.

In *Whiteselle* v. *Northwestern Mutual Life Ins. Co.*, 221 S.W. 575 (Texas), occurs the following statement:

The use of community funds in payment of premiums for insurance upon the life of one spouse in favor of the other does not, in the absence of fraud, create in the community the right to reimbursement for the funds so used.

In the instant case, petitioners contend that, because it is stipulated that "the premiums on all of the policies were paid out of community income," it follows as a matter of law that the wife paid one

half and the husband one half. We do not think this is necessarily so. The husband was head and master of the community, and as such, the law of Louisiana permitted him to use community funds for the payment of insurance premiums on his life, so long as he did not defraud his wife in so doing, and, in the absence of fraud, the wife had no redress. There is no evidence that fraud was present here and, since all the policies were made payable to the wife, such a possibility would scarcely exist. There is, likewise, no evidence of any agreement on the part of the wife that she was to pay any portion of the premiums in question. The respondent has determined that the policies were taken out by the decedent on his own life, and we find nothing in the record, or in article 25 of Regulations 70, *supra*, that would warrant us in disturbing this determination. Cf. *John Bromley et al., Executors*, 16 B.T.A. 1322. We, therefore, conclude that the action of the respondent in including in decedent's gross estate under section 302 (g), *supra*, proceeds of insurance in the amount of $136,851.13 was entirely proper and in accordance with the law thereunto pertaining.

*Judgment will be entered for the respondent.*