CARMEN GOENAGA WIDOW OF PIZÁ, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 287. Decided October 16, 1962.

*Leopoldo C. Delucca* for appellant. *J. B. Fernández Badillo, Solicitor General, Carlos G. Látimer, Assistant Solicitor General,* and *Juan A. Faría* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Subdivision (*a*) of § 1 of Act No. 303 of April 12, 1946, which imposes a tax on inheritances and gifts, provides that the amount of any ordinary life or endowment policy is a gift when the person paying the premiums of such policy is not the same person who will receive the proceeds thereof upon liquidation. Section 15 (§ 14 of Act No. 99 of 1925) provides that the word "person" shall be construed to in-

clude . . . corporations as well as partnerships, associations of all kinds and private persons. 13 L.P.R.A. §§ 881(a) and 882 (1962 ed.).

Subdivision (e) of § 1 of Act No. 303 defines "taxable gift" as the amount of any gift minus the exemptions allowed by § 4. Section 4 provides that there shall be exempt from taxation . . . (3) the first $10,000 of the total amount of ordinary life or endowment insurance on the life of the insured . . . provided the beneficiaries are the surviving spouse and/or relatives in the first or second degree of consanguinity or affinity. 13 L.P.R.A. §§ 881(e), 886 (1962 ed.).

Upon the death of her husband on November 5, 1956, appellant received the sum of $49,000 as beneficiary of the latter's life insurance policies. She paid inheritance and gift tax on that amount. Later she requested the refund of $7,429 of the tax paid alleging that she was bound to pay tax on only one half of the proceeds of the policies, $24,500, less the $10,000 exemption allowed by law, namely, on $14,500. Her contention is that she paid one half of the premiums of the insurance policies, and that under the above-transcribed section only one half of the proceeds of the policies on which she paid no premiums, less the exemption, was *taxable gift*. The trial court rightly dismissed her complaint on the ground that appellant has no cause of action.

There is no evidence in the record before us that these premiums or any part thereof were paid with appellant's separate funds or that she took out insurance on her husband's life, with her money, for her benefit. The trial court determined as a question of fact that the husband paid the premiums *"presumably"* with community funds. We will assume, in the absence of evidence in the record before us, that that was the situation. Hence, if appellant's contention should prosper, it would necessarily have to be on the basis that because she was his spouse the payment of the

premiums was for the account of the legal community partnership, thereby implying that it belonged to the community partnership. Yet, she did not regard it as such since she adjudicated for her own benefit the entire policy proceeds, according to the evidence in the record, which was excluded from the assets before computing her community property. If we part from the community concept of the payment, it would be logical to consider the community concept of the proceeds. We will see, however, that the community concept of the proceeds would not be controlling in the problem raised.

■ It being a fact that the insurance premiums were paid with money belonging to the legal community partnership, according to the state of law created under § 338 of the Code of Commerce (1932 ed.)—26 L.P.R.A. § 1291 (1955 ed.)—the insurance proceeds corresponded entirely to appellant as sole beneficiary, independently of her status of forced heiress and of the community-property computation. Cf. Cádiz v. Jiménez, 30 P.R.R. 33; Schluter v. Heirs of Díaz, 41 P.R.R. 875; Espósito v. Guzmán, 45 P.R.R. 771; Oliver v. Oliver, 57 P.R.R. 478; Teachers' Association v. District Court, 66 P.R.R. 664, 668.[1]

■ However, we are facing a tax problem which should be approached and decided in the light of the particular statute on the matter, as stated in Wood v. Tax Court, 71 P.R.R. 216.[2] Thus, as beneficiary of the insurance policies, appellant would be bound to pay tax on the entire

---

[1] Section 338 of the Code of Commerce (1932 ed.) was repealed by Act No. 77 of June 19, 1957, which took effect on January 1, 1958. 26 L.P.R.A. (1962 ed.).

[2] This case involved a life policy payable to "The Estate of Lewis Robert Wood." It was paid to the widow as sole testamentary heiress. She claimed the exemption under § 4 of Act No. 303, which was denied because under those circumstances she was not the "beneficiary" of the policy, but an heiress who received the amount thereof as heir and because the policy had been issued in the name of the decedent's "Estate." This case is distinguished and did not alter the state of law established under § 338 of the Code of Commerce.

proceeds received by her, pursuant to § 1 (*a*) of Act No. 303, subject to the provisions of § 4, with total abstraction of the origin of the policy. However, § 1 (*a*) provides that the amount of ordinary life insurance is not a gift, subject to the statutory provisions, if the person who pays the premium is the same person who receives the policy proceeds.

 Assuming that the husband did not pay the premiums with his private money, could it be said at law that appellant herself paid all or part thereof on the person of her husband for the purposes of § 1 (*a*) of Act No. 303, or for any other purpose? In the first place, we do not have in our system such concept of the common law of the unity of person between the spouses in matrimony.[3] On the other hand, the principle of juridical status of the legal community partnership as being separate from the person of either spouse who so binds himself to the husband as its administrator and legal representative, is traditional in our civil system. Sections 91, 93, 101, 1295, 1296, 1301, 1308, 1312, 1313, 1315, Civil Code, 1930 ed. We need not repeat the citation of our authorities. See *Berrocal* v. *District Court*, 76 P.R.R. 35. Hence, there is no room in our doctrine for the theory that the daily expenses incurred by the conjugal partnership during its existence were at law being incurred personally by each spouse, in moiety or in any proportion.

---

[3] In *Serrano* v. *González*, 68 P.R.R. 579, an action for damages by the wife against the husband, Mr. Justice De Jesús stated as follows: "As Manresa says, today no one may allege seriously the unity of person in matrimony, for there is no provision whatsoever in the Civil Code, nor in any other statute, from which this principle may emanate. [Citation] With less reason may the unity of person be alleged under our Civil Code, since it has eliminated many of the disabilities of the wife found in the Spanish Civil Code."

MANRESA was commenting the Spanish § 1458, counterpart of our § 1347, 1930 ed., according to which husband and wife can not mutually sell property to each other. On another occasion, referring to the family regime, he comments that husband and wife are two human beings who complement each other, *but who do not substitute themselves*. Vol. 10 at 121 (5th ed.); Vol. 1 at 467 (7th ed.).

Husband and wife are in such sense in a situation similar to that of the partners under a partnership contract. Section 1298. What is distributed between the spouses upon liquidation of the partnership is its estate, if any, not the costs or expenses incurred during its existence, except in those specific cases in which the law provides otherwise pursuant to §§ 1310 and 1317. Ordinarily, and were it not for the authority of § 338 of the Code of Commerce which, as held in *Cádiz*, substituted the applicable civil doctrine, these policies obtained with funds of the community partnership would have also had the concept of community property upon liquidation thereof. In such case only one half would have gone to the taxable estate, but, on the other hand, only one half would have corresponded to appellant. There is no question that the lawmaker, with knowledge of our particular state of law, possibly provided in §§ 1(*a*) and 4 of Act No. 303 differently from that of other jurisdictions. Obviously the legal community partnership comes within the definition of "person" contained therein.

The case of *Lang* v. *Commissioner*, 304 U.S. 264, relied on by appellant, is not controlling here. The problem therein raised (we will consider the widow only) was whether all or any portion of the proceeds of a policy, premiums which were paid out of community funds, must be treated as part of decedent's gross estate. That problem is not involved here since, as has been seen, the entire insurance was excluded from the estate under our applicable law. Section 302(*g*) of the Federal Revenue Act of 1926 ordered the inclusion in the gross estate of a decedent to the extent of the amount receivable by the executor as insurance under policies *taken out by the decedent* on his own life, as well as to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance. By administrative regulation it was provided that insurance is deemed *to be taken out by the decedent* where the decedent

himself pays all the premiums, directly or indirectly, whether or not he makes the application. The insurance is not deemed *to be taken out by the decedent*, even though the application is made by him, where all the premiums are paid by the beneficiary. Where a portion of the premiums were paid by the beneficiary and the remaining portion by the *decedent,* an adequate proportion was established for the purpose of including the insurance in the gross estate. (Treasury Regulations No. 70, art. 25.)[4]

Accepting the conclusion of the trial court to the effect that in the State of Washington the community partnership is a separate entity and that life insurance obtained with community funds was community property, *the character of which the husband could not defeat by a change of beneficiary,* the Supreme Court held that the wife had paid one half of the premiums, with the exception of some policies the premiums of which were not fully paid out of community funds, and for the purposes of the aforesaid administrative regulation it ruled that one half of the proceeds should not be reckoned as part of the estate. There is no question that the *Lang* decision responds to criteria of law in the State of Washington concerning the powers of the husband as administrator of the community, which is not the law in our jurisdiction. Those criteria are fully set forth and discussed in *Occidental Life Ins. Co. v. Powers,* 74 P.2d 27, 192 Wash. 475, not a tax case. It was held that a husband who had obtained with community property life insurance policies for the benefit of his wife, such policies were community property and he could not substitute her as benefi-

---

[4] The basic issue in the *Lang* case is better appreciated in 34 B.T.A. 339: "The petitioner, however, contends that, under articles 25 and 28 of Regulations 70 (1929 Edition), and the community property laws of the State of Washington, a proportionate part of the proceeds or value of such policies, corresponding to the portion of premiums paid with community funds, constitutes community property, and one-half thereof should be eliminated from the gross estate of decedent because it is the property of the wife and not of the decedent."

ciary without her consent, notwithstanding the insurance contract permitted the substitution, under the doctrine that such substitution constituted a gift or disposition of community property in favor of a new beneficiary. Washington has denied such power to the husband, holding that although he is the manager of the community partnership, he may dispose of its property (personal property was involved in this case) only for the benefit of the community itself. It is not necessary to argue that under our positive law and in the light of our authorities there are different criteria in our jurisdiction.[5]

Apart from any other considerations involved, the decision in the *Lang* case responds fundamentally to the fact that those insurance policies obtained by the husband with community funds were community property. As a result, only one half of the proceeds was part of the husband's estate object of transfer by reason of his death. In *Lang* a provision such as that of § 338 of the Code of Commerce which, as the same has been applied, excludes from the hereditary provisions the proceeds of life insurance, the concept of which is not community, even though the premiums were paid from community funds, did not come into play. The community character of the payment does not have in our case the decisive effect of the insurance which it had in *Lang* and has had in the State of Washington. In the light of the foregoing, she received a taxable gift for the total amount of the insurance under § 1 (*a*) of Act No. 303.

The judgment appealed from will be affirmed.

---

[5] See the discussion of the problem in *Jacob K. Newman et al., Executors*, 29 B.T.A. 53, *aff'd, Newman* v. *Commissioner*, 76 F.2d 449, decisions which the Supreme Court refused to review in 296 U.S. 600. *Cf. United States* v. *Stewart*, 270 F.2d 894, *cert. denied*, 361 U.S. 960. Annot. 73 A.L.R.2d 226 *et seq.*, 118 A.L.R. 324. The cases show that the question whether or not the insured spouse reserved under the policy the right to substitute during his lifetime the beneficiary spouse by another person, has played an important role in treating the problem as respects the tax event.