LOUISE C. MOORE, EXECUTRIX, ESTATE OF EDWARD W. MOORE, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58720. Promulgated September 30, 1935.

*T. G. Thompson, Esq.,* and *John E. Morley, Esq.,* for the petitioners.

*Arthur H. Fast, Esq.,* and *H. D. Thomas, Esq.,* for the respondent.

OPINION.

BLACK: This case involves a deficiency in estate tax imposed by the Revenue Act of 1926 and depends upon the question of whether or not the proceeds of certain life insurance policies are includable as part of the gross estate of Edward W. Moore, deceased. In the deficiency notice the respondent determined the deficiency at $36,655.76, based upon the inclusion of the value of a number of life insurance policies in the decedent's gross estate. By affirmative allegations in his amended answer the respondent seeks to include in the gross estate certain other life insurance policies and to increase the deficiency to $50,319.50. This procedure is permissible. *Louis M. Weiller et al., Executors,* 18 B. T. A. 1121.

The facts were stipulated in writing and there is, therefore, no necessity for separate findings of fact.

The decedent, Edward W. Moore, died May 8, 1928, and the case falls under the Revenue Act of 1926, section 302 (g), as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *.

\*     \*     \*     \*     \*     \*     \*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

All of the policies in controversy were taken by the decedent prior to the Revenue Act of 1926 and prior to the Revenue Act of 1918, which first imposed a tax upon life insurance as part of a decedent's estate. In the petition and amendments thereto petitioners questioned the constitutionality of section 302 (g) of the Revenue Act of 1926 in its application to policies which were issued and in effect prior to the effective date of the Revenue Act of 1918. However, at the hearing and on brief, petitioners elected not to argue the question of constitutionality.

Where, as here, the policies were taken out before the effective date of the act, but the insured died after the effective date of the act, and retained some of the elements of ownership until his death, the act applies and is not unconstitutional. *Chase National Bank* v. *United States,* 278 U. S. 327; *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339; *Heiner* v. *Grandin,* 44 Fed. (2d) 141; *H. T. Cook et al., Executors,* 23 B. T. A. 335; affd., 66 Fed. (2d) 995; *Jacob K. Newman et al., Executors,* 29 B. T. A. 53.

In his deficiency notice the respondent included in decedent's gross estate proceeds of insurance amounting to $453,942.87, which after allowing the $40,000 exemption left $413,942.87 subject to taxation. In his amended answer respondent listed for taxation additional policies in the sum of $151,624.11, and prayed that the deficiency be increased accordingly.

The following 16 policies, all of which were included by the respondent in decedent's gross estate in the deficiency notice, reserved the right in the insured to change the beneficiaries:

GROUP I.

| Exhibit No. | Company | Policy No. | Date taken out | Beneficiary |
|---|---|---|---|---|
| 1 | Bankers Life Association | 66984–66986 | Nov. 19, 1897 | Wife. |
| 7 | New York Life | 4735792–4735794 | Oct. 23, 1914 | Do. |
| 8 | ____do | 4979745 | Aug. 8, 1916 | Do. |
| 9 | ____do | 3704778–A | Sept. 14, 1905 | Do. |
| 10 | ____do | 4090983 | Aug. 14, 1908 | Do. |
| 11 | Sun Life of Canada | C. L. 6969 | Feb. 2, 1913 | Children. |
| 12 | Penn Mutual Life | 328338 | Mar. 12, 1906 | Do. |
| 13 | ____do | 322835–322839 | Feb. 28, 1906 | Do. |

Under the decisions of the courts and this Board, where the right to change the beneficiary is reserved to the insured at the time of his death the value of such policies is considered part of the decedent's gross estate and should be included therein for estate taxation purposes. *Chase National Bank* v. *United States, supra; Reinecke* v. *Northern Trust Co., supra; Heiner* v. *Grandin, supra; H. T. Cook et al., Executors, supra; Jacob K. Newman et al., Executors, supra.*

All of the above mentioned policies were properly included in decedent's gross estate, but several of them that were payable in installments should not have been included at full face value, but for the commuted value only. This commuted value has been stipulated and should be used in a redetermination of the deficiency under Rule 50.

A second group of policies included by respondent in his deficiency notice is as follows:

GROUP II.

| Exhibit No. | Company | Policy No. | Date taken out | Beneficiary |
|---|---|---|---|---|
| 2 | New York Life | 3709416 | Sept. 14, 1905 | Wife. |
| 3 | ____do | 3704778 | ____do | Children. |
| 4 | ____do | 3704778–B | ____do | Do. |
| 5 | ____do | 3704778–C | ____do | Do. |
| 6 | ____do | 3704778–D | ____do | Do. |

In these policies, which were installment policies, there was no right reserved to the insured to change the beneficiaries. We have held in several cases that where the policy of insurance does not reserve to the insured the right to change the beneficiary, the proceeds

of the policy are not includable as a part of decedent's estate. *Helena Liebes, Executrix*, 20 B. T. A. 731; affirmed on other points, 63 Fed. (2d) 870; *Philip W. Blood et al., Executors*, 22 B. T. A. 1000; *David A. Reed et al., Executors*, 24 B. T. A. 166. These cases all cite, as principal authority for their ruling, *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339.

All of the policies included in group II above, although they reserved no right to the insured to change the beneficiary, contained the following provisions: Paragraph 7 of the " General Provisions ", reading: " The insured may, without the consent of the beneficiary, receive every benefit, exercise every right, and enjoy every privilege conferred upon the insured by this policy."

Among the privileges and rights granted the insured were the following:

(1).—Receive in Cash the Dividend and Bonus then apportioned, and continue the Policy by payment of the same premium as previously; or,

(2).—Receive in Cash the Dividend and Bonus then apportioned, and receive Non-participating Paid-up Insurance, payable in one sum, as fixed by the Table on the second page, and discontinue this Policy; or,

(3).—Receive the Entire Cash Value, as stated below, in Cash, and discontinue this Policy; or,

(4).—Receive the Entire Cash Value, as stated below, converted into an Annual Income for Life, and discontinue this Policy; or,

(5).—Receive the Entire Cash Value, as stated below, converted into Non-participating Paid-up Insurance, payable in one sum at the death of the Insured, and discontinue this Policy.

If a selection of one of the Optional Settlements is not made as above, the Policy will be continued upon payment of the same premium as previously, and the Dividend and Bonus then apportioned will be payable in Cash.

\* \* \* \* \* \* \*

The Insured may obtain Cash Loans on the sole security of this Policy, on written request at any time after premiums have been paid in cash for three full years, if this Policy is then in full force. The Insured shall pledge this Policy as collateral security for such loans, in accordance with the terms contained in the Company's form of Policy Loan Agreement then in use. The amount of loan available at any time is stated in Column 1 of the Table below, and includes Loans then unpaid. Interest will be at the rate of 5% per annum, payable in advance to the next anniversary, and annually in advance on that date and thereafter. If any Loan remains unpaid at the death of the Insured, and the amount of said Loan is not repaid in Cash before the first Instalment becomes payable under this Policy, the amount insured by this Policy shall not be paid in Instalments, as specified on the first page hereof, but shall be paid in one sum, namely $22,986.—from which shall be deducted the amount of said Loan and any other indebtedness due on this Policy.

We think that, under the provisions of the policies of the group just quoted, the insured clearly had an interest in them and their proceeds, which was not extinguished until his death and brings them within the Commissioner's regulations and numerous Board and court cases. Cf. *Sampson* v. *United States*, 1 Fed. Supp. 95;

112

*Edith Huggard Sharp et al., Executors;* 30 B. T. A. 532; *Caroline W. Edwards et al., Executors,* 31 B. T. A. 879.

Petitioner contends, however, that the authorities just above cited are not applicable because the contracts of insurance involved in group II are Ohio contracts, or, if not Ohio contracts, then New York contracts, where the policies were issued, and that in either event such policies are not includable in decedent's estate because under the laws of both Ohio and New York the insured at the time of his death had no rights in the policy which could be exercised without the consent of the beneficiary.

The general rule of law as to contracts of all kinds is that they are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, unless the contracting parties clearly appear to have had some other law in view. 12 Corpus Juris, p. 449. This rule applies to contracts or policies of insurance. *Liverpool & Great Western Steam Co.* v. *Phenix Insurance Co.,* 129 U. S. 397; *Equitable Life Assurance Society* v. *Pettus,* 140 U. S. 226; *Mutual Life Insurance Co.* v. *Cohn,* 179 U. S. 262.

The decedent was a resident of Ohio when the policies described in group II were taken out through Ohio agencies of the companies, and he was a resident of Ohio at the time of his death. Therefore, we think the law of Ohio governs the particular matter which we are now discussing.

The rule prevailing in Ohio is stated in Ohio Jurisprudence, vol. 22, sec. 268, as follows:

In the case of ordinary life insurance, the rights of the beneficiary attach immediately and become vested when the policy in which he is named as such is issued and the contract completed, unless the right is expressly given or reserved subsequently to designate a new beneficiary or avoid his rights. And the vested interest of the beneficiary, since it cannot be cut off except by his consent, cannot be divested by forfeiture clauses contained in the premium notice sign by the assured alone, and a policy on the life of the husband, when made payable to his wife, her executor, administrator or assigns, creates a vested interest in her the moment it is issued.

The following Ohio cases are cited: *Manhattan Life Insurance Co.* v. *Smith,* 44 Ohio St. 156; *Union Central Life Insurance Co.* v. *Buxer,* 62 Ohio St. 385; *Aetna Life Insurance Co.* v. *Penn,* 4 Ohio N. P. (N. S.) 97; *Douglas* v. *Metropolitan Life Insurance Co.,* 11 Ohio N. P. (N. S.) 513; *Teepen* v. *Schlacther,* 18 Ohio N. P. (N. S.) 33; *Schlacther* v. *Teepen,* 24 Ohio C. C. (N. S.) 30.

Notwithstanding the Ohio law quoted and urged by petitioners in their brief, we think the policies involved in this group are a part of decedent's gross estate, and that to include them is not in violation of Ohio law.

It will be noted that in the quotation which we have made from section 268, vol. 22, Ohio Jurisprudence, it is provided that the rights of the beneficiary attach immediately and become vested when the policy in which he is named as such is issued and the contract completed, " Unless the right is expressly given or reserved subsequently to designate a new beneficiary or *avoid his rights.*" (Emphasis supplied.) As to certain rights and privileges of these policies, it is plain that the insured reserved the right to exercise them without securing in any way the consent of the beneficiary. This right existed at the time of decedent's death and makes the policies includable as a part of decedent's estate under the authorities above cited and does no violence to Ohio law.

The case of *Emily King Parker et al., Trustees,* 30 B. T. A. 342, a case involving the inclusion of policies of insurance in an Ohio decedent's gross estate, is distinguishable on its facts.

These policies in group II were installment policies, however, and should not have been included at their face value, but at their present or commuted value only. This commuted value has been stipulated and should be used in a redetermination of the deficiencies under Rule 50.

In his amended answer the respondent seeks to include in the decedent's gross estate the following policies, amounting to $151,624.11:

GROUP III.

| Exhibit No. | Company | Policy No. | Date taken Out | Beneficiary |
|---|---|---|---|---|
| 14, 15 | New England Mutual Life | 114071, 114072 | Dec. 16, 1897 | Wife. |
| 16 | Berkshire Life | 59203 | Dec. 11, 1899 | Wife as trustee for children. |
| 18 | National Life of Montpelier | 90737 | Oct. 1, 1897 | Wife. |
| 19 | Mutual Benefit Life | 280549 | Sept. 26, 1899 | Do. |
| 20 | Canada Life | 83400 | Dec. 17, 1901 | Do. |
| 21 | ____do | 83401 | ____do | Do. |
| 22 | ____do | 83402 | ____do | Do. |

In none of these policies was the right to change the beneficiary reserved. They contained provisions for cash surrender values and loan values, and other provisions similar to those contained in the policies described in group II. However, they did not contain that particular provision noted as to policies in group II and which we think is the determinative factor as to the inclusion of the policies in group II, to wit: " The insured may, without the consent of the beneficiary, receive every benefit, exercise every right and enjoy every privilege conferred upon the insured by this policy."

Petitioner makes the same contention as to the policies in group III as was made respecting the policies in group II, to wit, that they were all Ohio contracts, and that under the laws of the State

of Ohio the insured had no right to surrender the policies for their cash surrender value or borrow their loan value by putting up the policies as collateral security, without the consent of the beneficiaries. We think petitioner's contention as to the policies in group III must be sustained.

In *Emily King Parker et al., Trustees, supra*, three ordinary participating life 20-installment bond policies were taken out in 1903 by the decedent. The wife of the insured was named beneficiary with no right to change the beneficiaries. The insured could surrender the policies for cash in 1923, but not thereafter. They contained provisions for paid up insurance for extended insurance in case of default of premiums, and for loans on the policy upon legal assignment of the policies to the company as collateral security. We held that the insured could not borrow on the policies without the beneficiary's consent, under the laws of Ohio, where the contracts were signed by the insurance company, and of Missouri, where the insured lived, made application, and received the policies. We further held that at the time of his death decedent had no interest in the policies which he could exercise without the consent of the beneficiary and the proceeds thereof should be excluded from the gross estate, following *Levy's Estate* v. *Commissioner*, 65 Fed. (2d) 412, and *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339. Cf. *Pennsylvania Co. for Insurances on Lives and Granting Annuities* v. *Commissioner*, 79 Fed. (2d) 295.

As to the policies described in group III above, we hold for petitioner.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

ARUNDELL, dissenting: I disagree with the majority report in so far as it holds that the proceeds paid under policies contained in group II should be included in decedent's gross estate.

LEECH agrees with this dissent.