M. W. DOBRZENSKY, AS EXECUTOR OF THE ESTATE OF WILLIAM GLENN MARVIN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77017. Promulgated April 10, 1936.

---

**306**

*M. W. Dobrzensky, Esq.*, pro se.
*G. W. Brooks, Esq.*, for the respondent.

OPINION.

LEECH: This proceeding attacks the determination of an estate tax deficiency of $1,003.78 against the estate of William Glenn Marvin, who died January 5, 1932, a resident of California.

In making his determination of the deficiency the respondent included in the gross estate of the decedent the proceeds of six policies of life insurance in the amount of $90,763.72, which the representative of the estate did not return for taxation.

We find the facts as stipulated. Only those essential to an understanding of the issues will be repeated here.

The decedent was for many years the attorney and managing director of the American Manufacturers Foreign Credit Underwriters, Inc. On December 9, 1927, on application of the corporation the John Hancock Mutual Life Insurance Co. issued a group policy of life insurance for $1,000, including the decedent as one of the insured.

This was increased to $1,500 on December 9, 1929. This policy was applied for and the premiums paid by the corporation. Decedent's wife was designated as beneficiary, but he had the right to change the beneficiary. In July 1931, the insured Marvin became totally disabled and became entitled to and was paid $125 per month under the terms of the policy. At the time of his death there was a balance due on the policy of $763.72, which respondent included in his gross estate for taxation.

On January 29, 1924, the Travelers Insurance Co. on the application of the decedent Marvin issued a term policy on his life for $50,000 in which the American Manufacturers Foreign Credit Underwriters, Inc., was named as beneficiary. This term policy, on the joint application of the decedent and the American Manufacturers Foreign Credit Underwriters, Inc., was converted into a limited payment life policy on June 16, 1925, for $50,000 in which the same beneficiary was designated. On June 20, 1925, the American Manufacturers Foreign Credit Underwriters, Inc., assigned the contract to the decedent, who on June 22, 1925, designated his wife as the beneficiary, but reserved the right to revoke the designation and subject to the consent of the insurance company to name a new beneficiary.

The board of directors of American Manufacturers Foreign Credit Underwriters, Inc., passed the following resolution on February 1, 1926:

Upon motion duly made and seconded, the following resolution was adopted:

WHEREAS the American Manufacturers Foreign Credit Underwriters, Inc. had the life of its Managing Director, William G. Marvin, insured in the amount of $50,000.00, the beneficiary under the policy being the company, and

WHEREAS, William G. Marvin was not maintaining a sufficient amount of insurance to cover his personal estate and as his state of health was not such as to make it desirable to approach any insurance company for additional insurance, and

WHEREAS, William G. Marvin has given unstintedly of his time, energy and great abilities, and has borne all the large responsibilities of Managing Director of this corporation without salary or compensation, and, notwithstanding his change of residence to California, continues to serve the corporation in the capacity of Managing Director, actively cooperating with the management in his invaluable advice, counsel and personal influence which would justify a very large compensation.

NOW, THEREFORE, BE IT RESOLVED:

First: That as some slight evidence of appreciation and recognition of these valuable services, it is the sense of this directorate, and it is so ordered, that the above life insurance policy be converted into a twenty year payment life policy, payable to the estate of said William G. Marvin, and

Second: That all premiums and costs incidental to the conversion of said policy, and the renewal premiums thereof be assumed by this corporation, all of which is hereby confirmed, ratified and approved.

All of the premiums on both policies were paid by the American Manufacturers Foreign Credit Underwriters, Inc.

The decedent Marvin was, for many years, a practicing lawyer in New York City and was the senior member of the law firm of Marvin & Pleasants and its successor, Marvin & Bergh. Both firms had an extensive commercial practice and had as one of their regular clients the American Manufacturers Foreign Credit Underwriters, Inc.

The firm of Marvin & Bergh was formed by written contract January 17, 1927, at which time the decedent Marvin was living in California because of ill health. After many detailed clauses relating to the duties and interests of the various partners it was provided as follows:

21. Inasmuch as the predecessor firm of MARVIN AND PLEASANTS paid premiums on life insurance policies upon the life of the said Marvin totaling FIFTY THOUSAND DOLLARS ($50,000.), and paid premiums on policies totaling FIFTEEN THOUSAND DOLLARS ($15,000.) on the life of the said Bergh, all such premiums being paid as a firm expense, the parties hereto agree to continue the payment of premiums upon the said policies as an expense of the firm of MARVIN AND BERGH, except that the total of the life insurance policies paid for the account of the said Marvin shall be reduced to FORTY THOUSAND DOLLARS ($40,000).

22. In the event of the death of either Marvin or Bergh, life insurance proceeds received by the beneficiary designated in the insurance policies mentioned in paragraph 21 shall be received in lieu of interest and good will of the said firm, and shall entitle the remaining partners to use the name of any such deceased partner in the firm style in perpetuity.

Section 23 of the contract provided that upon the death of any partner his estate should be paid his participation percentage in the appraised value of the furniture, library, carpets, and equipment of the firm, and in section 24 it was agreed that if Marvin was unable to return to active practice within seven years, he would sell his good will in the firm to the remaining partners for a sum equal to four times his interest in the firm profits for the year preceding the sale.

On April 30, 1929, a new contract of partnership was entered into by the firm admitting new members and providing for the interests of the decedent Marvin as retiring partner. Among other things it was provided as follows:

That Marvin in consideration of any services that he may in his discretion render to the firm, and in consideration of giving to the other parties hereto the right in perpetuity to use his name "Marvin" in the firm name and style, whether in the present style or in some other combination of names, as the present active partners, Bergh, Greaves and O'Melia, or their successors and/or assigns may determine, is to receive the following participation in the net profits of the firm for a period of twelve years:

Year commencing May 1, 1929—34 points
Year commencing May 1, 1930—31 points
Year commencing May 1, 1931—28 points
Year commencing May 1, 1932—25 points
Year commencing May 1, 1933—20 points
Year commencing May 1, 1934—20 points
Year commencing May 1, 1935—18 points
Year commencing May 1, 1936—16 points
Year commencing May 1, 1937—16 points
Year commencing May 1, 1938—16 points
Year commencing May 1, 1939—10 points
Year commencing May 1, 1940—10 points

\*     \*     \*     \*     \*     \*     \*

That during the life of this agreement, the firm is to continue to pay the premiums on the life insurance policies totaling $40,000 on the life of the said Marvin that it has heretofore been paying; that it is to continue to pay the premiums on the life insurance policies on the life of the said Bergh that it has been paying, and is in addition to pay premiums on other policies on the life of Bergh so as to bring the total amount of such policies up to $40,000; that it is to pay premiums on life insurance policies totaling $15,000 on the life of the said O'Melia; and that it is to pay premiums on life insurance policies totaling $15,000 on the life of the said Greaves, or at its option, in the event that premiums therefore should be extremely high, may elect to carry such insurance itself, and in the event of his death, pay his estate the sum of $15,000, payable in four (4) semi-annual installments during the course of two (2) years.

That in the event of the death of Marvin or Bergh or O'Melia, the life insurance proceeds received by the beneficiary designated in the life insurance policies mentioned in the last preceding paragraph shall be received in lieu of interest in the good will of the said firm, and in the case of said Marvin, in lieu of the payment of any further participation as provided in paragraph 6 above, and shall entitle the remaining partners to use the name of any such deceased partner in the firm style in perpetuity.

Under these contracts, four policies of insurance, each for the sum of $10,000, were applied for by the decedent Marvin and issued by the Travelers Insurance Co. Marvin's wife was the designated beneficiary in two of the policies, and in the other two his estate was named as beneficiary. These latter two policies were assigned by him to the partnership, and were immediately reassigned to him by the partnership. He then changed the beneficiary to his wife. In all four policies he retained the right to change the beneficiary. All premiums were paid by the succeeding partnerships. Marvin's average participation in the profits of the firms during the existence of these policies was 42.34 percent.

The Revenue Act of 1926, section 302 (g), is controlling. It provides:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—(a) To the extent of the interest therein

of the decedent at the time of his death; * * * (g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

Since the decedent, at death, possessed the reserved right to change the beneficiary in all the disputed policies the amounts receivable by the beneficiaries under those policies were properly included in decedent's gross estate here (*Louise C. Moore, Executrix*, 33 B. T. A. 108), if, and only if, those policies were "taken out by the decedent upon his own life."

In *Bessie M. Ballinger, Executrix*, 23 B. T. A. 1312, this Board construed the quoted words literally. The group insurance policy, the subject of inquiry there, was similar in all material respects to the group policy here. The fact that disability payments had been made to the insured under the present group policy clearly does not change the fact that the contested death benefits under the policy, matured only at the death of the insured and was an "amount receivable by other beneficiaries [not the estate of the insured] as insurance." In excluding the proceeds of that policy from the gross estate of the insured, the Board said:

With respect to the group policy, it appears that the insurance was taken out by the Ballinger Company for its employees, and was not taken out by decedent upon his own life. The statute covers amounts received "by the executor as insurance under policies *taken out by decedent upon his own life*", and the excess over $40,000 received by all other beneficiaries from insurance "*taken out by* decedent upon his own life." Since the statute fails to provide for the inclusion of the proceeds of insurance policies taken out by others on the decedent's life, it would seem that Congress did not intend to include such proceeds in computing a decedent's gross estate. As to the group policy, therefore, we hold that the proceeds should be excluded from decedent's gross estate, because such policy was not taken out by decedent upon his own life.

Upon the authority of that case we hold that respondent erred in including the amount received by decedent's widow under this group policy in decedent's gross estate. See Revenue Act of 1934, sec. 22 (a) (3), G. M. C. 16069.

The $50,000 policy described in the facts was applied for by decedent. The American Manufacturers Foreign Credit Underwriters, Inc., was named as beneficiary thereunder. Later, decedent assigned the policy to that company. Following this, the policy, then a term policy, was converted into a limited payment life policy and then, still later, on June 20, 1925, the company assigned it to decedent and he made his wife the beneficiary with the right reserved to make further change thereof. Almost a year later, on February 1, 1926, the resolution by the directorate of the company, appearing

in the facts, was adopted. The adoption of no such resolution by the shareholders is disclosed. The directors could not legally give away the corporate property. We will not assume they acted illegally. Decedent had furnished and was even then furnishing the company with his "invaluable advice, counsel and personal influence which would justify a very large compensation." True, decedent was not paid a salary by the company directly, but the law firm of which he was a member and in the profits of which he shared, drew large fees from the company.

Then, "as some slight evidence of appreciation and recognition of these valuable services" the directorate assumed the costs incidental to the conversion of this policy from a term to a limited payment life policy, and its future premiums. We conclude that action constituted not a gift to decedent but compensation paid to him for those services. *Frank D. Yuengling*, 27 B. T. A. 782; affd., 69 Fed. (2d) 971; *George Matthew Adams*, 18 B. T. A. 381; *Chauncey L. Landon*, 16 B. T. A. 907. Cf. *David Herbert Botchford*, 29 B. T. A. 656; affd., 81 Fed. (2d) 914.

And, since decedent acquired this policy for such services, that policy must be regarded, in law, as "taken out by the decedent upon his own life." *Edgar A. Igleheart et al., Executors*, 28 B. T. A. 888; affd., 77 Fed. (2d) 704.

We now consider the four $10,000 policies, the premiums on which were paid by decedent's succeeding law firms, of the last of which decedent was a member at his death.

The decedent's average percentage in the profits of these law firms during the existence of these policies was 42.34 percent. It is petitioner's position that the decedent paid the premiums on the presently disputed policies only to the extent of 42.34 percent thereof, and that it follows that the proceeds of this insurance includable in the decedent's estate is limited to the same percentage of the proceeds of the policies.

The applications for these policies were signed by decedent.

Despite the agreement that these premiums were to be "paid as firm expense", our inquiry is to the actual status of those payments. *Mitchell* v. *Doyle*, 247 U. S. 179. The premiums on these policies, after the second partnership agreement, were paid by that firm, of which decedent was a member at his death, not as a distribution of the proceeds of the partnership, as such, but as consideration for the right to use decedent's name as a member of the firm in perpetuity, decedent's interest in the good will of the firm, which was valued at four times the value of a year's interest in the business, and his right to limited participation in partnership profits until May 1, 1941, as provided by that agreement. Conversely, by so assigning those

rights and interest to his law firm, decedent bought these policies and they are therefore regarded as having been "taken out by the decedent upon his own life." *Edgar A. Igleheart et al., Executors, supra.*

The inclusion of the proceeds of these policies in the gross estate of petitioner's decedent, under the controlling statute, is, therefore, sustained.

In the case of *Boston Safe Deposit & Trust Co., et al., Executors,* 30 B. T. A. 679, the Government attempted to include in decedent's gross estate, not only the value of decedent's partnership interest, but also the proceeds of a policy of life insurance having a status substantially similar to the last four policies with which we are here concerned. We properly held that such would result in unjustifiable double taxation.

It is apparent the result there reached was correct but that the theory supporting it was wrong. The rationale of the *Igleheart* case, *supra*, was controlling there as well as here. The double taxation feature does not make it less so. Decedent acquired the insurance policy there involved by purchase or exchange. The consideration therefor was decedent's relinquishment of certain rights in partnership property. After that acquisition decedent no longer had any right, at his death, in the relinquished assets, but, instead, had a taxable interest in an insurance policy. Obviously, the decedent could not be taxed with an asset, as his own, at death, and, at the same time, taxed with the consideration he relinquished for that asset. But, we there sustained the inclusion of the value of the assigned partnership interest which was the consideration decedent paid or exchanged for the insurance policy, and excluded from decedent's gross estate, the proceeds of that policy which was the asset he thus acquired. This was error. The proceeds of the insurance policy, in full, were includable in decedent's gross estate there within the provisions of section 302 (g) of the Revenue Act of 1926, which is applicable here. *Edgar A. Igleheart, et al., Executors, supra.* However, since decedent had relinquished certain partnership interests in exchange for the insurance asset purchased, only the value of his remaining partnership interests, at his death, was includable in his gross estate. On the record there before us, the value of this remaining partnership interest was the amount by which the value of decedent's full partnership interest, at his death, exceeded the amount of the proceeds of the insurance policy.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK concurs in the result.

MATTHEWS, dissenting on the second point. I disagree with the reasoning in the majority opinion in so far as it relates to the insurance policies which were carried on the life of the decedent by the partnership of which he was a member at the date of his death. These policies were carried by the firm at firm expense and had been so carried by the predecessor partnerships in the same manner.

Under the partnership agreement in effect at the date of decedent's death, it was provided in paragraph 6 that decedent, in consideration of any services he might render to the firm and in consideration of giving the other partners, and any successor firm, the right in perpetuity to use his name, "Marvin", was to receive diminishing portions of the profits of the firm for a period of 12 years, "and that upon making these payments Marvin will be retired from the firm and his entire interest therein liquidated." The firm was to continue to pay the premiums on the life insurance policies on Marvin's life and to pay premiums on policies on the lives of the other general partners. In the event of the death of Marvin or any other partner on whose life insurance was carried by the firm, the proceeds received by the beneficiary designated in the policies were to be received in lieu of the deceased partner's interest in the good will of the firm, and in the case of Marvin, in lieu of the payment of any further participation, as provided in paragraph 6, and the remaining partners would be entitled to use the name of any such deceased partner in the firm in perpetuity.

As between themselves the partners provided a means whereby the survivors could pay for a deceased partner's interest in the good will of the firm at the date of death. Therefore, regardless of whether the beneficiary designated was the estate of the partner or a person other than his estate, the proceeds discharged the obligation of the survivors to pay the deceased partner for his interest in the good will of the firm.

Although the amounts in the instant case were received by Marvin's wife as the proceeds of the policies on his life, the amount of such proceeds was the value at his death of his interest in the good will of the firm and the right to the use of his name. The full amount of such payment should be included in the estate tax return as the value of decedent's interest in the partnership and not as insurance proceeds.

It so happens that in the instant case the amount to be included in the gross estate will be the same whether it is called insurance proceeds or partnership interest. But a case might arise where it would affect the amount to be included in the gross estate. For example, suppose a decedent's life was insured under only one policy, that carried by his partnership under an agreement similar to the agreement in the instant case, and that the face amount of the policy

was $100,000 and was all payable to a beneficiary other than decedent's estate, and that, under the terms of the partnership agreement, the proceeds were to be in lieu of the decedent's interest in the partnership. His partnership interest under these circumstances would have a value at death of $100,000 and such amount should be included in the estate tax return. Under the principle of the majority opinion there would be nothing included in the return as partnership interest and only $60,000 returned as insurance proceeds, because all of the amount was payable to a beneficiary other than the estate of the insured.

The majority opinion holds that the premiums on the policies were paid by the firm of which decedent was a member at his death, as consideration for the right to use decedent's name as a member of the firm in perpetuity, for his interest in the good will of the firm, and for his right to limited participation in partnership profits until May 1, 1941; and that by so assigning those rights and interest to the partnership decedent bought these policies. With this I can not agree. Under the partnership agreement, decedent was to be a member of the partnership until his death or May 1941, whichever occurred first. He was to participate in the profits until 1941. As long as he was a member of the firm, the other members did not have to pay for use of his name. The provisions with respect to the policies were not provisions whereby each member was buying policies of insurance on his life or selling his interest in the firm for such policies, but were provisions whereby the firm was carrying insurance which would inure to the benefit of the surviving partners and provide them with the means to pay for the interest of a deceased partner immediately upon his death. The right of the insured partner to name the beneficiary to whom such proceeds should be paid was nothing more than a designation by him of the person to whom the value of his partnership interest was to be paid.

I think the reasoning in *Boston Safe Deposit & Trust Co. et al., Executors*, 30 B. T. A. 679, was correct and that the reasoning on the second point in this case is wrong. That decision should not be modified. The Commissioner filed a petition to review the *Boston Safe Deposit & Trust Co.* case in the Circuit Court of Appeals for the First Circuit, but later asked that the petition to review be dismissed and the case was affirmed per curiam December 10, 1934. There is nothing in the *Igleheart* case, 28 B. T. A. 888; affd., 77 Fed. (2d) 704, which requires any modification of the rule in the *Boston Safe Deposit & Trust Co.* case. The facts are entirely different. There Igleheart purchased for an amount equal to the cash surrender value, 13 policies on his life taken out and carried by the corporation of which he was an employee, and in which the corporation was beneficiary. Thereafter, Igleheart had the beneficiary

changed to his wife and he paid subsequent premiums until his death. The question was whether the policies were taken out by decedent on his own life, and we properly held that the acquisition of the policies by purchase was, in result, the taking out of the policies by the decedent on the date of purchase by him of all the rights thereunder. In the instant case, the decedent did not purchase any policies from the partnership, and we do not get to the question of whether the policies were taken out by decedent upon his own life.

While respondent treated the $40,000 as insurance proceeds, paid to beneficiaries other than estate of the insured, and included the proceeds with other proceeds paid to beneficiaries other than his estate, he should have included the $40,000 in gross estate as the value of decedent's interest in the good will of the partnership at the date of his death, and have excluded it altogether from the amount includable in gross estate as insurance. The record does not show what was included in gross estate as the value of decedent's interest in the partnership at date of death. In the recomputation under Rule 50, the $40,000 should be added to the value of the partnership interest if it has not already been included therein. This will not result in any additional deficiency.